789 S.E.2d 779

**José Rafael SALAZAR**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0879–15–4.**

Court of Appeals of Virginia,
Fredericksburg.

Aug. 23, 2016.

Sean D. O'Malie (Law Offices of Sean D. O'Malie, PLC, on briefs), Fairfax, for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

Present: BEALES, RUSSELL and ATLEE, JJ.

RUSSELL, Judge.

José Rafael Salazar, appellant, was convicted in a bench trial of felony identity theft[1] in violation of Code § 18.2-186.3. On appeal, appellant argues the evidence was insufficient to establish all of the elements of the offense and that, even if the offense had been proven, the trial court erred in finding that the evidence established a financial loss in excess of the felony threshold of $200. For the reasons stated below, we affirm.

## BACKGROUND

■ "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Smallwood v. Commonwealth*, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us

---

1. Appellant was indicted and prosecuted for a violation of Code § 18.2-186.3, which is entitled "identity theft." The conviction and sentencing orders, however, indicate that appellant was convicted of "identity fraud" in violation of Code § 18.2-186.3. Given our resolution of the appeal, we remand to the trial court for the limited purpose of correcting the conviction and sentencing orders so that they provide that appellant was convicted of "identity theft" as opposed to "identity fraud."

to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Parks v. Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence establishes that, in 1999, Christian Childers purchased a home in Loudoun County, Virginia. In 2007 or 2008, Childers refinanced his mortgage on the property through Wells Fargo. In order to obtain that mortgage, Childers provided Wells Fargo with his social security number. Beginning in 2009, Childers began receiving mail and telephone calls at his home for the appellant, José Salazar, whom Childers did not know. In 2010, as a result of an increase in the amount of correspondence addressed to Salazar he received at his home, Childers subscribed to a credit monitoring service as a precaution. The cost of the credit monitoring service was approximately $29 a month, and Childers maintained the service from January 2010 through the time of trial.

In 2012, Childers received emails from Wells Fargo that were addressed to him, yet referenced José Salazar, a loan number that Childers did not recognize, and an unfamiliar address in Silver Spring, Maryland. Childers testified that he never used his social security number to obtain a mortgage loan for a home in Silver Spring, Maryland and that he never gave anyone else permission to do so.

Detective Terry Sheffer with the Loudoun County Sheriff's Office initiated an investigation regarding the correspondence and the Silver Spring property and testified at trial regarding what he discovered. In the course of the investigation, Detective Sheffer spoke with appellant. Appellant identified a loan application that he filed to obtain a refinance on his mortgage loan for the Silver Spring residence. Appellant told Detective Sheffer that the social security number on the document was not his own and that he "made up the number" in order to

obtain the loan. The social security number appellant used on the application was Childers' social security number.

Kimberly Moody, a financial crimes investigator for Wells Fargo also testified. Through her testimony, it was established that, in the records of Wells Fargo, the entity that ultimately held mortgages on both the home of appellant and the home of Childers, Childers' social security number was associated with two separate mortgage loans. The mortgage loan taken out by Childers on his own home was tied to Childers' social security number, and the mortgage loan appellant had taken out on his Silver Spring home was also tied to Childers' social security number.

At the conclusion of the evidence, appellant moved to strike the Commonwealth's evidence and argued that no evidence showed that the mortgagor had relied on Childers' social security number in approving the loan or that appellant knowingly had selected Childers' social security number as opposed to choosing the number randomly or by mistake. Appellant also argued that the Commonwealth failed to prove that the mortgagor suffered a financial loss. The trial court denied the motions and found appellant guilty.

Upon imposition of sentence, the trial court referred to the theft of "the information of a particular social security number" and indicated that it did not believe appellant's statement that he had made up the social security number without any knowledge that it was a real social security number.

This appeal followed. Specifically, appellant argues that the Commonwealth was required to prove: (1) that he knowingly used Childers' social security number, (2) that he had the intent to defraud, and (3) that he obtained money, credit, loans, goods or services through the use of Childers' social security number. He contends that the evidence did not establish these elements.[2] Alternatively, he argues that the evidence

---

2. On brief, appellant also argues that the evidence was insufficient to prove that he obtained, recorded, or accessed the identifying information of another person that was not available to the general public in

was insufficient to establish that anyone suffered a financial loss in excess of $200 as a result of his use of the number, and therefore, the trial court erred in convicting him of a felony as opposed to a misdemeanor.[3]

## ANALYSIS

### I. Standard of Review

In reviewing appellant's challenge to the sufficiency of the evidence, we note that we examine a factual finding "with the highest degree of appellate deference." *Thomas v. Commonwealth*, 48 Va.App. 605, 608, 633 S.E.2d 229, 231 (2006). The only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added). This deferential appellate standard "applies not only to the historical facts themselves, but the inferences from those facts as well." *Clanton v. Commonwealth*, 53 Va.App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (internal quotation marks omitted). "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts.'" *Tizon v. Commonwealth*, 60 Va.App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting *Haskins v. Commonwealth*, 44 Va.App. 1, 10, 602 S.E.2d 402, 406 (2004)).

However, the determination of what elements the Commonwealth was required to prove to obtain a conviction under

violation of Code § 18.2–186.3(A)(1). At oral argument, appellant noted that the language of the indictment tracked the prohibition found in Code § 18.2–186.3(A)(2). Given the language of the indictment and our ultimate conclusion that the evidence was sufficient to support a conviction under Code § 18.2–186.3(A)(2), we do not address appellant's argument regarding the requirements of Code § 18.2–186.3(A)(1).

**3.** Both parties consented at oral argument that, if we were to find that the evidence supported a conviction only for the misdemeanor, the remedy would be resentencing rather than a new trial. *See Commonwealth v. South*, 272 Va. 1, 630 S.E.2d 318 (2006).

Code § 18.2–186.3(A)(2) requires us to construe the statute. We conduct such a review *de novo*.

## II. Elements Required for a Conviction Under Code § 18.2–186.3(A)(2)

To ascertain the elements that the Commonwealth must prove to support a conviction under Code § 18.2–186.3(A)(2), we turn to the statute itself. "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)) (further citation and internal quotation marks omitted). "Under basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute," *Williams v. Commonwealth*, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003), and we are prohibited from adding language to or deleting language from a statute, *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012).

Code § 18.2–186.3(A)(2) provides that

It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to . . .

[o]btain money, credit, loans, goods, or services through the use of identifying information of such other person . . . .

What constitutes "identifying information" for the purposes of Code § 18.2–186.3(A)(2) is defined in Code § 18.2–186.3(C), which provides:

As used in this section, "identifying information" shall include but not be limited to: (i) name; (ii) date of birth; (iii) social security number; (iv) driver's license number; (v) bank account numbers; (vi) credit or debit card numbers; (vii) personal identification numbers (PIN); (viii) electronic identification codes; (ix) automated or electronic signatures; (x)

biometric data; (xi) fingerprints; (xii) passwords; or (xiii) any other numbers or information that can be used to access a person's financial resources, obtain identification, act as identification, or obtain money, credit, loans, goods, or services.

Applying the plain meaning of the words contained in the statute, *Davenport v. Little–Bowser*, 269 Va. 546, 555, 611 S.E.2d 366, 371 (2005), in the context of this case, the Commonwealth had to establish that appellant, with "the intent to defraud," used the social security number of another "person," without that person's "authorization or permission," in order to "[o]btain money, credit, loans, goods, or services." Code § 18.2–186.3(A)(2). The statute does not require the Commonwealth prove anything else to establish a violation.

Appellant contends that there is an additional, implied element under the statute. Citing the United States Supreme Court's decision in *Flores–Figueroa v. United States*, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), appellant argues that Code § 18.2–186.3(A)(2) requires that the Commonwealth prove that he *knew* that he was using the social security number of Childers as opposed to simply having made up the number at random. Although appellant is correct that the United States Supreme Court did hold in *Flores–Figueroa* that 18 U.S.C. § 1028A(a)(1), which imposes a mandatory minimum sentence for certain identity theft crimes, requires a showing that a defendant *"knew"* that the personal information "used, in fact, belonged to another person ..." 556 U.S. at 647, 129 S.Ct. at 1888, his reliance on the case is misplaced.

The text of the federal statute at issue in *Flores–Figueroa* provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), *knowingly* transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1) (emphasis added). The inclusion of the word "knowingly" in the statute led the United States Supreme Court to hold that it "requires the

Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores–Figueroa*, 556 U.S. at 657, 129 S.Ct. at 1894.

■ In contrast to 18 U.S.C. § 1028A(a)(1), Code § 18.2–186.3(A)(2) does not contain the word "knowingly." Thus, we must conclude that the General Assembly did not intend to impose a requirement that an offender actually know that the false social security number (or other identifying information) actually belongs to another person.[4] To hold otherwise would amount to this Court impermissibly "rewriting the statute under the guise of statutory construction." *Lahey v. Johnson*, 283 Va. 225, 230, 720 S.E.2d 534, 537 (2012). Thus, while the offense requires that the identifying information belong to another person, there is no requirement that appellant know who that person is or that the information actually does belong to another person.

---

4. That the General Assembly knows how to require that a fraudulent use of information to obtain benefits be "knowing" before the act is criminal is readily apparent from the Code of Virginia. Code § 18.2–186.2, the immediately preceding code section, provides that

> [a]ny person who (i) *knowingly* makes or causes to be made either directly or indirectly or through any agent or agency, any false statement in writing with the intent that it shall be relied upon, or fails to disclose any material fact concerning the financial means or ability to pay of himself or of any other person for whom he is acting, for the purpose of procuring aid and benefits available under any local, state or federally funded housing assistance program, or (ii) *knowingly* fails to disclose a change in circumstances in order to obtain or continue to receive under any such program aid or benefits to which he is not entitled or who *knowingly* aids and abets another person in the commission of any such act is guilty of a Class 1 misdemeanor.

(Emphasis added). We must give effect to the General Assembly's decision not to include "knowingly" in Code § 18.2–186.3(A)(2). *See Brown v. Commonwealth*, 284 Va. 538, 545, 733 S.E.2d 638, 641 (2012) ("[W]hen the General Assembly includes specific language in one ... statute, but omits that language from another ... statute, [courts] must presume that the exclusion of the language was intentional because under these circumstances, it is evident that the General Assembly knows how to include such language in a statute to achieve an intended objective; thus the omission of [such] language [in another statute] represents an unambiguous manifestation of a contrary intention." (internal quotation marks and citations omitted)).

With the required elements of the offense identified, we now turn to whether the Commonwealth's evidence was sufficient to establish those elements beyond a reasonable doubt.

### III. Sufficiency of the Evidence

There is no dispute that the evidence established that the social security number appellant used on the loan application belonged to Childers and that Childers did not give appellant permission or authorization to use his social security number. Appellant argues that the evidence failed to establish the remaining elements—namely, that he used Childers' social security number with the intent to defraud and that he used the number to "[o]btain money, credit, loans, goods, or services."

### A. Intent to Defraud

"Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Viney v. Commonwealth*, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005). Here, it is undisputed that appellant *intentionally* filled out and submitted a loan application using a social security number that was not his. There is no innocent explanation for such an action. Accordingly, this fact alone was sufficient to allow a reasonable factfinder to conclude, beyond a reasonable doubt, that appellant had the intent to defraud the lender when he used Childers' social security number on the loan application.

Of course, the Commonwealth's evidence of intent was not limited to the mere fact that appellant used Childers' social security number on the loan application. Through the testimony of Detective Sheffer, the Commonwealth introduced appellant's statement that he "made up the [social security] number in order to obtain the mortgage loan." Appellant's statement is sufficient, in and of itself, to allow a reasonable factfinder to conclude, beyond a reasonable doubt, that appellant had the intent to defraud the lender when he used Childers' social security number on the loan application. In short, the Com-

monwealth's evidence was more than sufficient to establish that appellant possessed the requisite intent to defraud.

### B. Obtain the Mortgage

 Appellant argues that it is not enough for the evidence to establish that he fraudulently used another person's social security number in an effort to obtain a mortgage loan, but rather, the Commonwealth must establish that he actually obtained a loan through the use of the false social security number. Assuming without deciding that appellant is correct, the evidence was sufficient to allow a reasonable factfinder to conclude beyond a reasonable doubt that appellant actually obtained a mortgage loan through the use of Childers' social security number.[5]

The completed loan application establishes both that the lender required a social security number to process the application and that appellant used Childers' social security number in an effort to obtain the loan. The fact that the records of Wells Fargo, the mortgage loan servicer, linked appellant's mortgage on the Silver Spring property to Childers' social security number is sufficient to establish that the mortgage actually was obtained through an application listing that social security number. Thus, a factfinder reasonably could conclude that appellant obtained the mortgage through the use of Childers' social security number.

Appellant argues that there is no evidence that the lender actually relied on the social security number. There is no explicit requirement in the statute that a lender rely on the false information, whether by conducting a credit check using the false social security number or by some other means, in making its loan determination. The statute requires only that the false information be used to obtain the loan, and we cannot add a reliance requirement to the statute crafted by the

---

5. Appellant's statement that he made up the number to obtain the loan conclusively establishes he used Childers' social security number in an effort to do so.

General Assembly.[6] *See Lahey*, 283 Va. at 230, 720 S.E.2d at 537. Here, the established facts that the lender requested the social security number on the application and that appellant provided the false number for the avowed purpose of obtaining the loan are sufficient to support a conclusion that appellant obtained the loan through the use of Childers' social security number.

## IV. Classification of the Offense

In general, violations of Code § 18.2–186.3(A)(2) are Class 1 misdemeanors; however, the statute identifies various aggravating circumstances that will result in the offense being a felony. Relevant here, Code § 18.2–186.3(D) provides, in pertinent part, that "[v]iolations of this section shall be punishable as a Class 1 misdemeanor. Any violation resulting in financial loss of greater than $200 shall be punishable as a Class 6 felony."

The statute does not provide a definition of financial loss. "When . . . a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (citing *City of Virginia Beach v. Flippen*, 251 Va. 358, 362, 467 S.E.2d 471, 473–74 (1996); *Marsh v. City of Richmond*, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987)). "Financial," of course, refers to the pecuniary, limiting the statute's reach to losses of money or things of monetary value as opposed to abstract injury to a property right. Thus, in context, "financial loss" means some monetary injury or non-reimbursed expenditure of funds that results from the use

---

6. Once again, Code § 18.2–186.2 reveals that the General Assembly knows how to craft such a requirement if that is its purpose. Code § 18.2–186.2, in pertinent part, prohibits the use of a false statement in writing "with the intent that it shall be *relied* upon" for the purpose of obtaining certain housing benefits. (Emphasis added). We must give effect to the General Assembly's decision not to include a reliance element in Code § 18.2–186.3(A)(2). *See Brown*, 284 Va. at 545, 733 S.E.2d at 641.

of another's identifying information as defined in Code § 18.2–186.3(C).

The Commonwealth argued, and the trial court found, that the evidence established a financial loss of greater than $200. Specifically, the Commonwealth argued that both the lender and Childers independently suffered losses greater than $200—the bank from lending money it would not have in a loan that, at one point, was noted to be in default and Childers from expending money on credit monitoring services. Appellant argues that the evidence did not support the conclusion that he caused a financial loss of at least $200. We address the two bases advanced by the Commonwealth in turn.

A. Purported financial loss of the lender

■ The Commonwealth argues that the evidence establishes that the lender suffered a financial loss of far greater than $200. After all, the initial loan amount was $344,000, and the loan was reported to be in default. Alternatively, the Commonwealth argues that the mere fact that more than $200 was loaned as a result of appellant's fraudulent use of Childers' social security number is sufficient to prove a financial loss of greater than $200. We disagree.

Although there was testimony that appellant received a loan far in excess of $200 and that the loan was, at least at one point, in default, there was no evidence that the lender suffered a financial loss. There was no evidence to establish whether, after the loan went into default, appellant brought it current by paying any contractually required penalties and interest or the loan remained in default. Even if the mortgage had proceeded to foreclosure, the lender could have been made whole through a foreclosure sale if appellant's equity in the home had exceeded the loan amount and any costs associated with the foreclosure sale.[7]

---

7. *See, e.g.,* Code § 55–59.4(A)(3) (providing the order or priority for the payment of costs and lienholders in a foreclosure sale and that any amount in excess of the liens and costs that is recovered is to be paid to the mortgage borrower); *Simard v. White,* 383 Md. 257, 859 A.2d 168,

■ The Commonwealth argues that the mere fact that the lender was tricked into loaning money through appellant's fraudulent use of Childers' social security number is sufficient to establish a "financial loss." In the context of a mortgage loan, whether a lender has suffered a financial loss is dictated by the terms of the loan agreement and the circumstances surrounding any events of default/foreclosure. If a person fraudulently obtains a mortgage through the use of another person's identifying information but makes all of the mortgage payments on time consistent with his contractual obligations, a mortgage lender has not suffered a financial loss.[8]

Although the lender in this case *may* have suffered a financial loss, the absences of evidence regarding the terms of the loan agreement, the ultimate resolution of the loan after it went into default, and the results of a foreclosure sale, if any, required the factfinder to engage in speculation to conclude that the lender, in fact, suffered the requisite financial loss. Accordingly, the purported financial loss of the lender cannot be used to enhance the crime from a Class 1 misdemeanor to a Class 6 felony.

B. Financial loss of Childers

■ Alternatively, the Commonwealth argues that the payments Childers made for credit monitoring services after he became concerned that someone had stolen his identity

---

203 (2004) (noting that "the practice of mortgage foreclosures was designed to (1) pay the expenses of sale, (2) pay off the mortgage debt, (3) return to the mortgagor the surplus as representing the true remaining value of the property sold").

**8.** This is not to say that the person fraudulently obtaining the mortgage has not committed a violation of Code § 18.2–186.3(A)(2) or potentially other crimes when the loan application is filed or the lender provides the funds. *See, e.g.,* Code § 18.2–186 (criminalizing false statements made to obtain a loan or credit and tying an enhanced penalty to the amount of the loan or credit extended, but not requiring proof of a "financial loss"). Rather, it simply recognizes that neither an application nor the providing of the funds is sufficient to establish that, when only those events have occurred, a *mortgage lender* has suffered the "financial loss" required by the General Assembly to enhance a violation of Code § 18.2–186.3(A)(2) to a Class 6 felony.

establish that Childers suffered a financial loss of greater than $200 as a result of appellant's use of Childers' social security number. The record makes clear that Childers contracted for credit monitoring services only *after* he began receiving communications addressed to Salazar related to financial/credit issues tied to Salazar's fraudulent use of Childers' social security number.[9] Accordingly, the record establishes that Childers' payment of the funds *resulted from* Salazar's criminal use of Childers' social security number.

The record also amply demonstrates that Childers paid, without reimbursement, $29 a month for the credit monitoring services and that the services were in place for more than seven months. Accordingly, the record establishes that Childers spent more than $200 for the credit monitoring services. Thus, the sole remaining question is whether such payments constitute a "financial loss" within the meaning of Code § 18.2–186.3(D).

In general, crime victims are not entitled to restitution for costs incurred to prevent further criminal activity. For example, in *Howell v. Commonwealth*, 274 Va. 737, 652 S.E.2d 107 (2007), the Supreme Court reversed a trial court's restitution award that reimbursed the burglary victim for the costs incurred to install a security system to help stop losses that might be occasioned by future burglaries. *Id.* at 741, 652 S.E.2d at 109. The Supreme Court reasoned that such expenses were not the direct result of the burglary, and therefore, could not be recovered in restitution as having been "caused by the offense." *Id.*

Although the reasoning of *Howell* might suggest that Childers has not suffered the requisite financial loss, *Howell* is distinguishable. First, on the record before us, it is clear that Childers contracted for credit monitoring services as a direct result of appellant's yet-to-be discovered criminal use of Child-

---

**9.** We do not address a scenario in which a person's identifying information is used in violation of Code § 18.2–186.3(A)(2), but that person had contracted for credit monitoring services *prior* to the misappropriation of his identifying information.

ers' social security number and not merely to prevent or ameliorate a second criminal event that was yet to occur.

Second, and more importantly, the General Assembly has made clear that such costs incurred by victims of violations of Code § 18.2–186.3(A)(2) are one of the very evils the statute was enacted to combat. Specifically, Code § 18.2–186.3(E) provides that

> Upon conviction, in addition to any other punishment, a person found guilty of this offense shall be ordered by the court to make restitution as the court deems appropriate to any person whose identifying information was appropriated or to the estate of such person. Such restitution may include the person's or his estate's actual expenses associated with correcting inaccuracies or errors in his credit report or other identifying information.

Because the General Assembly made such payments subject to an award of restitution, we conclude that, taking the statutory scheme as a whole, such payments can be used to establish a financial loss resulting from the violation of Code § 18.2–186.3(A)(2). Accordingly, the evidence was sufficient to support the factfinder's determination that appellant's illegal conduct "result[ed] in [a] financial loss of greater than $200," and therefore, we affirm appellant's conviction for a felony violation of Code § 18.2–186.3(A)(2). *See* Code § 18.2–186.3(D).[10]

## CONCLUSION

For the foregoing reasons, we find that the evidence was sufficient for the trial court to conclude, beyond a reasonable doubt, that appellant was guilty of violating Code § 18.2–186.3(A)(2) and that such violation resulted in a financial loss

---

**10.** For the first time on appeal, appellant argues that the "financial loss" aspect of Code § 18.2–186.3 is impermissibly vague because it is not reasonably defined in terms of who must have sustained the loss in order for the court, or an accused, to ascertain what constitutes a felony or misdemeanor offense. We will not consider on appeal an argument that appellant did not raise in the trial court. Rule 5A:18.

in excess of $200. Accordingly, the judgment of the trial court is affirmed.

*Affirmed and remanded.*