COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia

UNPUBLISHED

CRAIG EUGENE ADAMS

MEMORANDUM OPINION[*] BY
v.      Record No. 0275-22-2        CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 13, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Dennis J. McLoughlin, Jr. (McLoughlin Law PLC, on briefs), for
appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Craig Eugene Adams was found guilty in a bench trial of possessing a controlled

substance, contempt of court for failure to comply with pre-trial conditions, providing false

identification to a police officer, driving on a revoked license, and possessing drug paraphernalia.

*See* Code §§ 18.2-250(A)(a), 18.2-456(A)(5), 19.2-82.1, 46.2-301, 54.1-3466. The appellant

argues that the trial court erred in denying his motion to suppress and holding that the evidence

was sufficient to sustain the false identification charge under Code § 19.2-82.1.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On brief, the appellant asserts that all of his convictions should be reversed. However, the charges of giving false identification and driving on a revoked license would be impacted only by the underlying traffic stop, which the appellant did not contest below. Further, the appellant pled guilty to driving on a revoked license and stipulated to the evidence related to the charge of contempt of court for failure to comply with pre-trial conditions. The motion to suppress challenged the pat down and seizure of the syringes, which related specifically to the charges for possession of drugs and paraphernalia. Consequently, only those two convictions are encompassed by the appellant's Fourth Amendment challenge.

On the afternoon of November 26, 2019, Virginia State Trooper J.A. Cabrera conducted a traffic stop after seeing a driver make an improper lane change on the highway. The appellant was the driver of the car. When Cabrera activated his blue lights to initiate the stop, the appellant turned on his hazard lights but did not stop his vehicle. Trooper Cabrera activated his siren, but the appellant continued driving for approximately two more miles. As Cabrera followed, he saw the appellant make continuous furtive movements. Trooper Cabrera forced the appellant to stop by angling his police car in front of the appellant's vehicle.

After the appellant stopped his car, Trooper Cabrera approached him and asked for his identification. The appellant admitted he did not have a driver's license but did not immediately tell the trooper his name.

After the appellant got out of his car, Cabrera conducted a pat-down search. The trooper was concerned for his safety due to the furtive movements he had observed prior to the stop and because no other officers were present. During the pat down, Cabrera felt syringes in the appellant's pocket, which he recognized as possible contraband used to inject illegal drugs. As a result, he removed the syringes from the appellant's pocket.[3]

The appellant initially did not tell the trooper his name, but after the pat down he said his name was "Greg Jean" and gave a birthdate. Cabrera wrote the name on his hand. Unable to

---

[2] In accordance with familiar principles of appellate review, we recite the facts in the light most favorable to the Commonwealth, as the prevailing party at trial. *See, e.g., Knight v. Commonwealth*, 71 Va. App. 771, 782 (2020) (motion to suppress); *Salazar v. Commonwealth*, 66 Va. App. 569, 575 (2016) (sufficiency).

[3] The timing of the seizure of the syringes is disputed on appeal. Below, Trooper Cabrera testified that he "believe[d]" that he seized them after learning of the outstanding arrest warrants for the appellant but that he could not remember. Due to the trial court's alternate holding and this Court's resolution of the issue, the timing of the seizure does not affect the outcome of this case on appeal.

find a person with that name and birthdate in the police database, Trooper Cabrera asked the appellant for his "actual name." The appellant responded with his correct name, Craig Eugene Adams. He also provided his correct birthdate, which was the same day as the original date he gave Cabrera but one year earlier. When he ran the correct information, Trooper Cabrera found multiple outstanding arrest warrants for the appellant and learned that his driver's license was revoked. Cabrera then arrested him.

During a subsequent search of the appellant's car, the trooper found a can with a burned bottom. This item and one of the syringes later tested positive for fentanyl.

Before trial, the appellant moved to suppress the evidence recovered during the pat-down search. He argued that Cabrera exceeded the scope of a lawful search by removing the syringes from his pocket because the trooper did not feel a weapon. At a hearing held the morning of trial, the trial court denied the motion. The court found that Trooper Cabrera had probable cause to believe the syringes he felt were contraband and that alternatively the doctrine of inevitable discovery applied.

At the bench trial that followed, the appellant argued that the evidence was insufficient to support the charge of falsely identifying himself to law enforcement. The trial court rejected that argument.

The court found the appellant guilty of contempt of court, possessing a controlled substance, providing false identification to a police officer, driving on a revoked license, and possession of drug paraphernalia.[4] *See* Code §§ 18.2-250(A)(a), 18.2-456(A)(5), 19.2-82.1, 46.2-301, 54.1-3466. The appellant was sentenced to three years for the felony offense and a total of 220 days for the misdemeanors, with all but three months of that sentence suspended.

---

[4] The appellant also was charged with eluding the police, but the trial court did not find him guilty of that offense.

ANALYSIS

I. Motion to Suppress

The appellant challenges the trial court's denial of his motion to suppress evidence. On appeal, the party challenging a denial of a motion to suppress bears the burden of showing "that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." *Jones v. Commonwealth*, 277 Va. 171, 177-78 (2009) (quoting *McCain v. Commonwealth*, 275 Va. 546, 552 (2008)). In conducting this analysis, the reviewing court "give[s] deference to the factual findings" of the trial court. *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). In doing so, the appellate court "give[s]" the trial court "the benefit of any reasonable inferences" from the evidence. *See Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)). In contrast, whether the facts establish a Fourth Amendment violation is reviewed de novo. *See Knight v. Commonwealth*, 71 Va. App. 771, 783 (2020). As such, the reviewing court "independently determine[s] whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Cole*, 294 Va. at 354 (quoting *Cost*, 275 Va. at 250). We consider the appellant's assignment of error in light of these well-established principles.

The appellant argues that because Trooper Cabrera had only a "hunch" that the syringes he felt in the appellant's pocket were contraband and possession of syringes is not per se illegal, he did not have probable cause to remove them.[5] The Commonwealth responds that Cabrera

---

[5] The appellant does not challenge the pat down itself. *See generally Adams v. Williams*, 407 U.S. 143, 146 (1972) ("The purpose of this limited [pat-down] search [during an investigatory stop] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . .").

lawfully seized the syringes and further that they would be admissible regardless under the inevitable discovery doctrine.

Appellate courts strive to decide cases "on the best and narrowest grounds available." *See, e.g.*, *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (quoting *White*, 293 Va. at 419). To achieve that goal in this case, we assume without deciding that the pat down was unlawful and address whether the evidence was admissible under the inevitable discovery doctrine.

That doctrine provides a narrow exception to the rule that "[o]rdinarily, evidence obtained as the result of an unlawful search is subject to suppression." *Commonwealth v. Jones*, 267 Va. 532, 535 (2004). Under this exception, "evidence obtained by unlawful means is admissible if that evidence or information 'ultimately or inevitably would have been discovered by lawful means.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 763 (2019) (quoting *Jones*, 267 Va. at 536).

In order for this exception to apply, the Commonwealth must show that the evidence meets two criteria. First, it must demonstrate "a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct." *Id.* (quoting *Jones*, 267 Va. at 536). Second, the Commonwealth must prove "that the leads making the discovery inevitable were possessed by the police at the time of the misconduct." *Id.* (quoting *Jones*, 267 Va. at 536). Further, inevitable discovery cannot be based on speculation "but focuses on demonstrated historical facts capable of ready verification." *Id.* at 765 (quoting *Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984)).

Here, Cabrera stopped the appellant for improperly changing lanes on the highway, a traffic infraction. The stop was not challenged. The appellant admitted that he did not have a valid driver's license, but he did not immediately give Cabrera his correct name or birthdate.

Determining the appellant's identity was necessary to permit the trooper to complete the traffic stop, and Cabrera would have continued to question the appellant to ascertain his true identity even if no pat down had occurred. Once Cabrera obtained the appellant's correct identifying information, he necessarily would have checked police databases pursuant to usual police practices and discovered the outstanding warrants for the appellant. The warrants would have led to the appellant's arrest and the recovery of the syringes during a search incident to arrest. *See Jones*, 267 Va. at 537 (holding that the investigating police officer "had a lead sufficient to satisfy" the second prong because he would have checked the defendant's criminal history after seeing him flee the scene with a gun in his hand and would have learned information resulting in the defendant's arrest). On the record before us, the Commonwealth established a reasonable probability that the trooper would "ultimately and inevitably . . . have . . . discovered" the syringes "by lawful means." *See id.* at 538. The fact that the appellant was not initially forthcoming about his identity was a "lead" that Cabrera had when he conducted the pat down. Consequently, "[t]he trial court did not err" in denying the motion to suppress "under the doctrine of inevitable discovery." *See id.*

In light of this holding, we reject the appellant's argument that inevitable discovery does not apply here because Trooper Cabrera did not have any "leads" that would eventually have resulted in the appellant's arrest when he took the syringes. Cabrera was conducting a traffic stop and ascertaining the appellant's identity in that process. *See generally Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (noting that common inquiries during a traffic stop include "checking the driver's license" and "determining whether there are outstanding warrants against the driver"). In the normal course of police procedure, Trooper Cabrera's line of investigation would have inevitably led to the discovery of the appellant's outstanding warrants, his arrest, and

the detection of the syringes.[6] *See Knight*, 71 Va. App. at 788 (stating that the inevitable discovery doctrine applies where "the circumstances are such that, pursuant to some standardized procedures or established routine[,] a certain evidence-revealing event would definitely have occurred later" (quoting 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.4(a), at 363-64 (5th ed. 2012))).

For these reasons, the trial court's denial of the appellant's motion to suppress was not error.

## II. Sufficiency of the Evidence

The appellant argues that the evidence was insufficient to support his conviction for falsely identifying himself to a law enforcement officer in violation of Code § 19.2-82.1. In this Court's review of the sufficiency of the evidence to support a conviction, we affirm the decision unless the trial court was "plainly wrong" or the conviction lacked "evidence to support it." *Ramsey v. Commonwealth*, 65 Va. App. 694, 697 (2015) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99 (2002)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). In conducting this review, the appellate court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the

---

[6] Trooper Cabrera testified that if he arrests someone based on a warrant, he searches that person incident to the arrest, in accordance with normal police procedure.

crime." *Salazar v. Commonwealth*, 66 Va. App. 569, 575 (2016) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010) (emphasis added)).

The appellant was tried by the circuit court, sitting without a jury. Accordingly, that court was the fact finder, and its judgment is afforded the "same weight as a jury verdict." *Caldwell v. Commonwealth*, 298 Va. 517, 526 (2020). Further, when an appellate court evaluates the sufficiency of the evidence, it does "not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Applying these legal principles, we review the sufficiency of the evidence to support the appellant's conviction under Code § 19.2-82.1. That statute proscribes "[a]ny person [from] falsely identif[ying] himself to a law-enforcement officer with the intent to deceive the law-enforcement officer as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer." Code § 19.2-82.1.

The appellant argues in this Court, as he did at trial, that given the similarity between "Greg Jean" and "Craig Eugene," Trooper Cabrera simply misheard him when he initially said his name. Cabrera, however, testified that he was "positive" he heard the appellant say "Greg Jean" and wrote down the name when the appellant said it.[7] He also said that traffic noise on the side of the highway was not "too loud" during the stop.

---

[7] In fact, a photo of the name written on the trooper's hand was admitted into evidence.

The trial court rejected the appellant's theory. Instead, it found that the appellant "convenient[ly]" gave a similar sounding name because he knew he had outstanding arrest warrants and that Cabrera did not mishear what the appellant said. *See Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017) ("The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder."). The appellant also initially gave an incorrect birthdate that was similar to his. This record supports the conclusion that the appellant intentionally gave a false name to Trooper Cabrera. Based on well-established principles, the trial court's factual finding was not plainly wrong or without supporting evidence. *See, e.g.*, *Ervin v. Commonwealth*, 57 Va. App. 495, 518-19 (2011) (en banc). Consequently, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the conviction.

CONCLUSION

Trooper Cabrera had a lead regarding false identity at the time of the pat down. He had probable cause to arrest the appellant once he became aware of the outstanding warrants and would have found the syringes during a search incident to arrest. Consequently, the doctrine of inevitable discovery applies, and the trial court did not err in denying the motion to suppress. Further, the evidence was sufficient to convict the appellant of falsely identifying himself to a law enforcement officer. Accordingly, we affirm the challenged convictions.

*Affirmed*.