COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued at Lexington, Virginia


GARY LAFAYETTE WALLER, SOMETIMES KNOWN AS
 BIG HEART EL BEY

                                                     MEMORANDUM OPINION* BY
v.        Record No. 0947-22-3                       JUDGE JUNIUS P. FULTON, III
                                                     NOVEMBER 14, 2023

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                                   John T. Cook, Judge

              Mark T. Stewart for appellant.

              Victoria Johnson, Senior Assistant Attorney General (Jason S.
              Miyares, Attorney General, on brief), for appellee.


        Gary LaFayette Waller, also known as Big Heart El Bey, appeals his convictions following

a jury trial for abduction, malicious wounding of a law enforcement officer, and two counts of use

of a firearm in the commission of a felony, in violation of Code §§ 18.2-47, 18.2-53.1, and

18.2-51.1.[1]  Waller asserts that the evidence is insufficient to support his convictions.  He also

asserts that the trial court erred when it prohibited testimony of his acquittal of the underlying

charges and when it instructed the jury it could infer malice from use of a deadly weapon.  For the

following reasons, we disagree and affirm the convictions.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Waller was also convicted of assault of a law enforcement officer, disarming a law
enforcement officer of his firearm, disarming a law enforcement officer of a chemical weapon,
and misdemeanor brandishing a firearm.  He does not challenge those convictions on appeal.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On March 12, 2020, Campbell County Sheriff's Deputy Paul Adams travelled to Waller's home to serve him with an arrest warrant for failing to appear in court. The warrant contained the names "Gary LaFayette Waller" and "Big Heart El Bey." Waller had legally changed his name to Big Heart El Bey. Deputy Adams testified that he wore his deputy uniform and had both his service issued firearm and his pepper spray.

Upon arriving at Waller's home, Deputy Adams observed Waller and another man on the front porch. As Deputy Adams exited his marked patrol vehicle and approached the house, the other man entered the home. Deputy Adams told Waller he was looking for Big Heart El Bey. Waller informed Deputy Adams that he did not know who that was. Deputy Adams, who was familiar with Waller, asserted that he knew that Waller was also known as Big Heart El Bey and explained that he had a warrant for Waller's arrest. Deputy Adams advised Waller that he would not handcuff him and that he would drive Waller home after he was processed for the arrest. Waller then requested to make a phone call, and Deputy Adams consented. While Waller made his phone call and entered his home, Deputy Adams requested the assistance of additional police units.

After several minutes, Deputy Adams climbed the porch steps and waited for Waller by the door. Eventually, Waller reappeared on the porch and Deputy Adams informed Waller it was time

- 2 -

to leave. Waller asserted that he was still waiting for a phone call and that he was going back inside. As Waller attempted to open the door, Deputy Adams put his left hand on the door and told Waller that he was coming inside with him. Deputy Adams explained that Waller was under arrest at that juncture and that, for the deputy's safety, he did not want Waller to enter the home unaccompanied.

Waller grabbed Deputy Adams's hand and the deputy stated, "Gary, don't make a felony out of this." In response, Waller accused Deputy Adams of assaulting him first. The interaction then turned violent: Waller hit Deputy Adams in the chest with both hands, shoved him against the railing, and forced him down the stairs. Deputy Adams tried to keep his balance while Waller pushed him but, as the pair reached the last step, Deputy Adams "just fell like a tree."

When Deputy Adams hit the gravel driveway Waller jumped on top of him and put him in a choke hold. Waller grabbed Deputy Adams's pepper spray and attempted to use it but was unable to. Deputy Adams reached for his service weapon, but Waller noticed and began reaching for it too. Deputy Adams jerked the firearm "out of the holster and stuck it between [his] legs" because he thought he could control the gun in that position. Waller, however, had better leverage and grabbed the firearm from Deputy Adams.

Waller leapt off Deputy Adams and, as the deputy stood, Waller struck him on the left side of his head with the firearm. When Deputy Adams was upright Waller did "a round house with the gun and hit[] [Deputy Adams] again." As Waller "fidget[ed]," he told Deputy Adams "to get off his property" and threatened to kill the deputy. Deputy Adams saw "anger in [Waller's] face," so he raised his hands and asserted that "he had no problem leaving." Deputy Adams explained that he lied to Waller to avoid being shot; he did not want to leave as he had a valid arrest warrant and Waller now had his service weapon.

At gunpoint, Waller marched Deputy Adams 30 feet to his patrol vehicle. As they walked, Waller noticed Deputy Adams's taser and asked Deputy Adams to give him "that gun." Deputy Adams responded, "[I]t's not a gun, buddy." Deputy Adams entered his vehicle and Waller stepped from the driver's door to in front of the vehicle, turned, and walked back into his home. Meanwhile, Deputy Adams called dispatch and advised that Waller had his firearm.

While contemplating his options, Deputy Adams remembered that he had his rifle in the trunk of his patrol car. Deputy Adams retrieved his rifle, chambered a round, and waited for Waller to exit the home. When Waller stepped outside again a few minutes later, Deputy Adams stood up and aimed his rifle at Waller. After several moments, Waller retreated into the home. Two minutes later, Waller exited the home on his knees and surrendered to Deputy Adams. The gun was in Waller's raised hand when he surrendered and Waller "pitche[d] it over behind him." Deputy Adams recovered his service weapon and waited for backup units to arrive.

Sergeants Randy Long and Jonathan Richie responded to Deputy Adams's initial request for backup. While in route to the scene, both sergeants heard Deputy Adams state over the radio that the suspect had his firearm. Sergeant Long testified that he could tell from Deputy Adams's voice that he was in trouble. When Sergeant Richie arrived, he observed Deputy Adams holding Waller at rifle-point on the front porch. After securing the home, Sergeant Richie and Deputy Christopher Cutlip took Waller into custody. Deputy Cutlip asked Waller if he was going to give the deputies any trouble, and Waller said "no." Deputy Cutlip told Waller that he had messed up, and Waller responded, "I know I did." At trial, the Commonwealth played for the jury the recording of the incident from Deputy Adams's dash camera.

As a result of the blows to the head, Deputy Adams experienced pain in the head for three weeks. Forensic nurse Elizabeth Barajikian examined Deputy Adams when he arrived at the

hospital immediately after the attack and noted that Deputy Adams had two contusions on his head and various abrasions and bruises on his arms and legs.

Waller testified in his own defense. On February 11, 2020, he was in court when the judge called a criminal case against Gary LaFayette Waller. Waller stood and stated that his name was Big Heart El Bey and that he no longer associated with the name Gary Waller. The judge informed Waller that if he was not Gary Waller, he could not speak for him. Consequently, Waller left the courtroom. Waller claimed that he did not know the judge would issue a warrant for his arrest because he did not respond to the name Gary Waller in court.

Waller acknowledged that when Deputy Adams arrived at his property on March 12, he appeared to be a Campbell County sheriff's deputy. Waller admitted that he ignored Deputy Adams's statement that Waller was under arrest and explained that at that time he believed he had not committed a crime and that Deputy Adams had no authority to arrest him.

Waller claimed that when he attempted to enter his home, Deputy Adams reached out and grabbed the door. As a result, Waller grabbed Deputy Adams's hand. According to Waller, Deputy Adams reached for his weapon; Waller protected himself by grabbing Deputy Adams. When the pair fell to the ground, Deputy Adams continued to reach for his gun so Waller took the firearm. Once he had secured the firearm, Waller told the deputy to leave his property. According to Waller, Deputy Adams lunged towards Waller and Waller hit Deputy Adams in the head with the firearm. Waller again ordered Deputy Adams to leave. Waller said that Deputy Adams lunged at Waller a second time and that Waller hit him with the firearm again. After being struck twice, Deputy Adams agreed to leave, and Waller walked him 30 feet at gunpoint to the patrol vehicle. Waller denied placing Deputy Adams in a choke hold or threatening to kill the deputy.

At the conclusion of all the evidence, Waller renewed his motion to strike. The trial court denied the renewed motion. The parties then discussed the jury instructions with the trial court. Waller objected to the Commonwealth's instruction on inferring malice from the use of a firearm. The instruction provided,

> You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

> A deadly weapon is any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

Waller argued that the firearm was not used as it was intended—to fire a projectile by means of an explosion. Instead, Waller used it as a blunt instrument. Malice, he asserted, could be inferred only if he used the weapon consistent with its intended purpose and design. The trial court granted the instruction, finding that it was an accurate statement of law and that the evidence could support a finding that the firearm was a deadly weapon.

The jury convicted Waller of the charges. The trial court sentenced him to 38 years of incarceration, with 28 years suspended. Waller appeals.

ANALYSIS

I. Procedurally Defaulted Assignment of Error

Waller asserts that that the trial court violated his constitutional rights to present evidence on his behalf when it prohibited him from informing the jury that he was acquitted of the failure to appear charge for which Deputy Adams tried to arrest him on March 12, 2020. In the trial court, Waller did not argue that the exclusion of the evidence of his acquittal violated his constitutional rights.

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The

- 6 -

rule requires that "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)); *see Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)), *aff'd*, 270 Va. 1 (2005). "Rule 5A:18 applies to bar even constitutional claims." *Id.* (quoting *Ohree*, 26 Va. App. at 308). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)); *Brown v. Commonwealth*, 279 Va. 210, 217 (2010). "Not just any objection will do. It must be both *specific* and *timely*— so that the trial judge would know the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743.

Here, Waller raises his constitutional challenge for the first time on appeal.[2] During the motion *in limine*, Waller only asserted that his acquittal for failing to appear was relevant to disprove he acted with malice. Waller did not assert that he had a Sixth Amendment right to present the evidence. "Although Rule 5A:18 contains exceptions for good cause or to meet the

---

[2] Although his assignment of error more broadly challenges the trial court's ruling "prohibit[ing] the defense from mentioning to the jury that [Waller] was acquitted of any of the underlying charges for which he was charged which led to his arrest in this case," his argument on brief is narrow and limited to alleged violations of the state and federal constitutions.

ends of justice, [Waller] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010). Accordingly, Rule 5A:18 bars our consideration of this assignment of error on appeal.

## II. Sufficiency of the Evidence

In challenging the trial court's denial of his motion to strike the abduction, malicious wounding of a law enforcement officer, and accompanying use of a firearm charges, Waller necessarily asserts that the jury should not have been allowed to even consider the charge because "[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). As a result, his challenge raises the question of whether the evidence adduced sufficiently presented "a *prima facie* case [of abduction, malicious wounding of a law enforcement officer, and use of a firearm in commission of a felony] for consideration by the" jury. *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

As our Supreme Court reaffirmed in *Linnon*:

> What the elements of the offense are is a question of law that we review de novo. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong. In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

287 Va. at 98 (quoting *Lawlor*, 285 Va. at 223-24).

A. Abduction

Waller asserts that the evidence was insufficient to prove he abducted Deputy Adams. "Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty," is guilty of abduction. Code § 18.2-47. Waller claims that any detention or asportation of the deputy was slight and merely incidental to the malicious wounding of Deputy Adams. He asserts that "walking Deputy Adams to his car at gun point did not pose any greater danger to Deputy Adams that was independent of or significantly greater than the danger posed by the assault itself."

In *Hoyt v. Commonwealth*, 44 Va. App. 489, 492 (2004) (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)), we recognized that "the General Assembly 'did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense.'" When determining whether an abduction is merely incidental to some other crime, we considered

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 494. Regarding such claims, the Virginia Supreme Court has held that "[t]he only issue . . . is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor*, 285 Va. at 225. Thus, for abduction to be punishable as a separate offense, the detention must be "separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Vay*, 67 Va. App. at 250 (quoting *Brown*, 230 Va. at 314). We focus "not on whether the restraint was merely useful to perpetrating a detention-plus

crime—but whether the restraint was 'intrinsic' to or 'inherent' in the detention-plus crime." *Pryor v. Commonwealth*, 48 Va. App. 1, 6 (2006) (citations omitted).

Here, the Commonwealth's evidence established an abduction of Deputy Adams that was not merely incidental to the malicious wounding of the deputy. Waller forced Deputy Adams down the porch stairs and to the ground where he disarmed the deputy of his pepper spray and firearm. Waller then struck Deputy Adams in the head with the firearm twice. Afterward, at gunpoint, Waller forced Deputy Adams to move 30 feet from the site of the initial attack to the deputy's patrol vehicle. Deputy Adams testified that he did not want to leave the scene when Waller obtained his firearm but followed Waller's directions because he did not want to be shot. This testimony was more than sufficient to support a finding that Waller used force or intimidation to move Deputy Adams to his car.

Further, a jury could reasonably infer that the malicious wounding was complete before Waller moved Deputy Adams from the area near the porch to the patrol vehicle. Waller used force—the threat of being shot with a firearm—separate and apart from any restraint involved in brutally attacking the deputy with the firearm. Finally, this movement substantially increased the risk of harm to the deputy as Waller could have shot the deputy while moving him to the car. In this way, the detention of Deputy Adams in the abduction was separate from, and not incidental to or inherent in, the preceding malicious wounding.

Waller next argues that the evidence failed to prove that he had the intent to deprive Deputy Adams of his personal liberty; rather, he intended only to expel Deputy Adams from his property.

"Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Salazar v. Commonwealth*, 66 Va. App. 569, 579 (2016) (quoting *Viney v. Commonwealth*, 269 Va. 296, 301 (2005)). Although a detention alone is not dispositive of the intent question, "proof of" detention "may be used to establish" such an intent

- 10 -

so long as "evidence [is] presented [to] establish both elements beyond a reasonable doubt." *Burton v. Commonwealth*, 281 Va. 622, 628 (2011). Furthermore, "[w]hen a defendant accomplishes an abduction by seizing . . . a victim, it *may* be a reasonable inference just from those physical actions that the defendant's intent was to deprive the victim of [his] personal liberty." *Id.* (emphasis added). Lastly, "a perpetrator may possess multiple intents at the same time." *Walker v. Commonwealth*, 74 Va. App. 475, 494 (2022). Simply because a "perpetrator has a motive in addition to restricting a victim's liberty does not prevent a reasonable conclusion that the perpetrator also intended to restrict a victim's liberty." *Id.*

Here, Waller's admitted intention to expel Deputy Adams from his property does not negate that he simultaneously harbored the intent to restrict Deputy Adams's liberty in that process. This intent can be inferred from the use of a firearm to complete the task of expulsion. Upon the evidence, a reasonable finder of fact could conclude that Waller harbored the intent to deprive Deputy Adams of his liberty. Accordingly, the trial court did not err in denying Waller's motion to strike the abduction charge.

### B. Malicious Wounding of a Law Enforcement Officer

Waller challenges the sufficiency of the evidence to support his conviction for malicious wounding of a law enforcement officer.

> If any person maliciously causes bodily injury to another by any means . . . with intent to maim, disfigure, disable, or kill, and knowing or having reason to know that such other person is a law-enforcement officer, . . . engaged in the performance of his public duties . . . such person is guilty of a felony punishable by imprisonment for a period of not less than five years nor more than 30 years.

Code § 18.2-51.1. Waller maintains that the evidence was insufficient to prove that he wounded Deputy Adams with the intent to kill, maim, disfigure or disable him. Waller asserts that, although he wrestled pepper spray and a firearm from Deputy Adams, he attempted to use only the pepper

- 11 -

spray against him.  Furthermore, Waller contends that he only struck the deputy twice, once while on the ground and once when Deputy Adams stood.

"[T]he 'fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts.'" *Brown v. Commonwealth*, 68 Va. App. 746, 788 (2018) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 820 (2000)).  "[W]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown*, 68 Va. App. at 787).

The Commonwealth's evidence proved that Waller struck Deputy Adams in the chest and pushed him off the porch.  Waller jumped on top of Deputy Adams and applied a choke hold.  During the struggle, Waller took both the deputy's service weapon and pepper spray.  Waller attempted, unsuccessfully, to use the pepper spray against Deputy Adams.  Waller then pistol whipped the deputy in the head while he was on the ground.  At Waller's direction, Deputy Adams stood up and Waller struck him with the gun again.  From the blows, Deputy Adams sustained two contusions to the head and other injuries; the attack caused the deputy pain in his head for weeks.  From these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that Waller intended to maim, disfigure, disable, or kill the deputy and that Waller was guilty of malicious wounding.

## C.  Use of a Firearm Charges

It is unlawful "for any person to use . . . any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . malicious bodily injury to a law-enforcement officer . . . or abduction."  Code § 18.2-53.1.  Waller asserts that because the evidence was insufficient to support his convictions for abduction and malicious wounding, the evidence necessarily was insufficient to sustain his two convictions for violating Code § 18.2-53.1.  Because the evidence was sufficient for a reasonable fact finder

- 12 -

to conclude that Waller maliciously wounded and abducted Deputy Adams, Waller's argument rests on a faulty underlying premise, and we need not further consider this claim.

### III. Jury Instruction on Inferred Malice

Waller asserts that the trial court erred when it instructed the jury that it could infer malice from the deliberate use of a deadly weapon. Waller notes that a deadly weapon is a weapon "which is likely to produce death or great bodily injury *from the manner in which it is used*." Whether a weapon is deadly often depends on the manner in which it was used rather than on its intrinsic character. Waller contends that "[i]f the law recognizes that an object that is not intrinsically deadly can be converted into a deadly weapon" through its manner of use, then the law must recognize its inverse. Specifically, he asserts that a firearm, which is considered per se deadly, "can be used in a manner that is not vicious and cruel; and therefore, not deadly." He asserts that he never used nor attempted to use the firearm in a manner that was likely to produce death or great bodily injury, therefore it was not a deadly weapon. Consequently, Waller maintains, the trial court erred in instructing the jury that it could infer malice from use of a deadly weapon.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" *Hinton v. Commonwealth*, 293 Va. 293, 302 (2017) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review *de novo*." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

"[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Id.* As the challenged instruction was offered by the Commonwealth, the burden was on the prosecutor to show that the proposed instruction was a "correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." *Miller v. Commonwealth*, 64 Va. App. 527, 547 (2015) (quoting *Shaikh v. Johnson*, 276 Va. 537, 546 (2008)).

In Virginia "[a] deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character." *Justiss v. Commonwealth*, 61 Va. App. 261, 278 (2012) (quoting *Cox v. Commonwealth*, 218 Va. 689, 691 (1978)). Thus, "unless a weapon is per se a deadly one, the jury should determine whether it, and the manner of its use, places it in that category, and the burden of showing these things is upon the Commonwealth." *Id.*

On appeal, Waller does not argue that the instruction was not an accurate statement of law. Thus, the only question before us is whether there is more than a scintilla of evidence to support the instruction on inferred malice from use of a deadly weapon. We find that there was.

The evidence shows that once Waller gained possession of the firearm, he struck Deputy Adams in the head with it twice before marching Deputy Adams to his patrol vehicle at gunpoint. From this evidence a reasonable fact finder could conclude that, although he did not fire the gun, Waller used the firearm in a manner that made it a deadly weapon, i.e., striking Deputy Adams twice in the head with a heavy metal object. *See Rose v. Commonwealth*, 53 Va. App. 505, 509-10 (2009) (rejecting an appellant's contention that when a gun was "used as a club," it was not being used as a "firearm," and stating: "[w]e find no language in Code § 18.2-53.1 that restricts its application to using firearms only in instances where the firearm

expels a projectile by force").  Consequently, the instruction on inferred malice was supported by more than a scintilla of evidence, and the trial court did not abuse its discretion in granting it.

CONCLUSION

We find that Waller's first assignment of error is waived as he raised his constitutional claim for the first time on appeal.  Further, the evidence was sufficient to support Waller's convictions of abduction, malicious wounding of a law enforcement officer, and two counts of use of a firearm in the commission of a felony.  Finally, we hold that the trial court did not abuse its discretion when it instructed the jury on inferring malice from use of a deadly weapon.  Accordingly, we affirm the trial court's decision.

*Affirmed*.