COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Russell and Retired Judge Bumgardner*
Argued at Norfolk, Virginia

JEFFREY NIGEL CARR

v.      Record No. 1054-17-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY GRACE O'BRIEN
JULY 24, 2018

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Following a bench trial, Jeffrey Nigel Carr ("appellant") was convicted of sex trafficking, in violation of Code § 18.2-357.1(A), conspiracy to commit sex trafficking, in violation of Code §§ 18.2-22 and 18.2-357.1(A)[1], abduction, in violation of Code § 18.2-47(A), conspiracy to commit abduction, in violation of Code §§ 18.2-22 and 18.2-47(A), and use of a firearm in the commission of abduction, in violation of Code § 18.2-53.1. Appellant challenges the sufficiency of the evidence finding him guilty of the offenses. Finding no error, we affirm.

---

* Judge Bumgardner participated in the hearing and decision of this case in his capacity as a senior judge of this Court prior to July 1, 2018 and thereafter by designation pursuant to Code § 17.1-400(D).

[1] The sentencing order contains a clerical error in that it incorrectly cites Code § 18.2-357(A) for appellant's conviction for conspiracy to commit sex trafficking. The order misidentifies the code section but properly describes the offense. Further, in its ruling, the court stated that it convicted appellant of the "lesser included offense of conspiracy to commit sex trafficking under 18.2-357.1(A)." (Emphasis added). Accordingly, we remand to the trial court for the limited purpose of correcting this clerical error. See Code § 8.01-428(B); Tatum v. Commonwealth, 17 Va. App. 585, 592-93, 440 S.E.2d 133, 138 (1994).

BACKGROUND

Following well-established legal principles, we consider the facts in the light most favorable to the prevailing party, the Commonwealth. Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence established that in September 2015, the victim ("R.S."), a homeless 24-year-old heroin addict, met Justin McQuitty in North Carolina where they had sex and used heroin together. R.S. subsequently accompanied McQuitty to a hotel in Chesapeake, Virginia, and they were joined by some of McQuitty's friends, including appellant. After a discussion about how the group could earn money, a third man, Alonzo McClenny, suggested that R.S. and another woman could post prostitution advertisements online at Backpage. McQuitty and McClenny told R.S. that she needed to make money because she "couldn't live for free." McClenny showed R.S. how to post photographs of herself on Backpage, and he created her first advertisement. R.S. continued posting advertisements, engaged in prostitution, and gave all money she received to McQuitty. He provided her with heroin.

After some time, the group relocated to a Red Roof Inn in Virginia Beach and rented two rooms facing each other, using the proceeds from R.S.'s prostitution. R.S. and McQuitty stayed in one room that R.S. also used for prostitution appointments, and the rest of the group, including appellant, slept in the second room. When a prostitution appointment was scheduled, R.S. advised the group to leave her room and stay in the second room. The group remained at the Red Roof Inn for "[q]uite a few days."

On September 16, R.S. left the hotel after a dispute with other members of the group. She rented a room at a hotel next door, America's Best Value Inn. The second day she was there, R.S. called the other woman in the group ("T.") and asked her to bring some clothes to the hotel. T. came to R.S.'s room accompanied by another man, Brandon Bethel. R.S. was suffering from heroin withdrawal, so McQuitty brought her some heroin and left Bethel "to keep an eye on [her]." Bethel

and McQuitty pressured R.S. to post a prostitution advertisement, and reminded her that she had not made any money that day.

At approximately 11:00 p.m., McQuitty returned to R.S.'s room with McClenny and appellant. The men berated R.S., called her a "liar and a junkie," and accused her of "giving [her] money to somebody else." During this confrontation, McClenny was holding a black handgun by his side. Appellant, who was pacing back and forth in an agitated state, told the other men that R.S. was lying and "they needed to slam-dunk on [her] ass." R.S. testified that "slam-dunk" refers to pistol-whipping.

R.S. informed the men that she "wasn't going to work for them anymore and [she] was done with it all and that [she] didn't need them" and "could do it on [her] own." At that point, McClenny brought the gun to R.S.'s head and told her that "the only way [she] was leaving was either with [McQuitty] or in a body bag." R.S. testified she interpreted this statement to mean that the men would kill her if she did not leave with them. McClenny told the other men to gather R.S.'s bags. R.S. returned to the Red Roof Inn, surrounded by the four men. Appellant carried some of her belongings.

When they got back to the Red Roof Inn, R.S. continued taking prostitution appointments. She testified that she did not want to engage in prostitution, but she understood that was "what was supposed to happen" and "[t]hat's what [she] was there for." She felt that returning to prostitution was necessary "to stay alive" because the men had threatened her.

R.S.'s first appointment robbed her. When she told Bethel, he responded that "it was going to be really bad for [her] . . . if [she] didn't have that money" and that she would be pistol-whipped if she did not do what she was told. Because she was afraid of the consequences, R.S. left in the middle of the night after everyone was asleep.

R.S. stayed with a former roommate in Chesapeake for a few days and warned him that the people she was with were "vindictive and violent," had guns, and were "the type of people you wouldn't involve with the police." However, R.S. subsequently reunited with McQuitty and continued to use heroin and engage in prostitution. Appellant stayed with them at their hotel, and they used R.S.'s prostitution earnings to rent the hotel rooms.

During this time, an investigator from the Dare County (N.C.) Sheriff's Office received information that a young woman was being held against her will and forced to commit acts of prostitution. The investigator coordinated with members of the Virginia Beach Police Department, who arrested McQuitty at a hotel in Virginia Beach. R.S., who was with McQuitty, told the police that she feared McClenny and indicated that appellant may be with McClenny because he "rides around with him a lot." A police officer found appellant and McClenny in a car together in Virginia Beach.

At trial, Detective Ryan Chabot of the Virginia Beach Police Department Special Investigations Unit testified as an expert in the field of human trafficking operations and sex worker victimizations. He stated that in the approximately five hundred human trafficking cases he had investigated, approximately half of the victims were drug addicts. He also explained that sex traffickers often rent two hotel rooms: one for prostitution appointments, and the other as a place for prostitutes or pimps to sleep or wait for appointments. Appellant possessed keys to two hotel rooms at the time he was arrested.

DISCUSSION

In assessing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S.

307, 319 (1979)). This Court does not "substitute [its] judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "[W]e will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it." Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999).

A. Sufficiency of the Evidence to Prove Abduction

Code § 18.2-47(A) provides, in relevant part, that a person is guilty of abduction if

> by force, intimidation or deception, and without legal justification or excuse, [he or she] seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty.

At trial, the Commonwealth's theory of the case was that appellant committed abduction as a principal in the second degree. "A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921) (quoting Minor's Synopsis Crim. Law, p. 11). "[M]ere presence and consent will not suffice . . . . The defendant's conduct must consist of 'inciting, encouraging, advising or assisting in the [abduction].'" Rollston v. Commmonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (quoting Frye v. Commonwealth, 231 Va. 370, 389, 345 S.E.2d 267, 280 (1986)).

To prove aiding and abetting, the evidence must establish that a defendant is "guilty of some overt act, or . . . share[s] the criminal intent of the principal." Triplett v. Commonwealth, 141 Va. 577, 586, 127 S.E. 486, 489 (1925). "When the alleged accomplice is actually present and performs overt acts of assistance or encouragement, he has communicated to the perpetrator his willingness to have the crime proceed and has demonstrated that he shares the criminal intent of the perpetrator." Rollston, 11 Va. App. at 539, 399 S.E.2d at 825-26 (quoting R. Groot, Criminal Offenses and Defenses in Virginia 183 (1984)).

Here, appellant, along with three other men, confronted R.S. in her room at America's Best Value Inn and accused her of giving someone else her money. One man, McClenny, prominently displayed a firearm during this confrontation. Appellant encouraged him to "slam-dunk on her ass," referring to pistol-whipping R.S. When R.S. said she was not going to work for the men any longer, McClenny held the firearm to her head and told her that "the only way [she] was leaving was either with [McQuitty] or in a body bag." Appellant then helped gather and carry R.S.'s bags back to the Red Roof Inn.

Appellant contends that because there was no evidence that he interacted with R.S. after she returned to the Red Roof Inn, and no evidence that he held her against her will or prevented her from leaving that hotel, he cannot be found guilty of abduction. We disagree. The crime was complete when appellant and his co-conspirators forced R.S. to return under duress to the Red Roof Inn. "The crime of abduction requires proof of an asportation or detention by force, intimidation or deception." Smith v. Commonwealth, 33 Va. App. 65, 70, 581 S.E.2d 608, 610 (2000). R.S. testified that she did not go back to the Red Roof Inn willingly, but because she was threatened. Her eventual escape from that hotel did not preclude the fact finder from concluding that appellant intended to deprive R.S of her personal liberty at the time he forced her to return there. See Wilson v. Commonwealth, 249 Va. 95, 103, 452 S.E.2d 669, 675 (1995) (holding that the defendant's mere initial act of forcing victims upstairs at knifepoint satisfied the elements of abduction). See also Walker v. Commonwealth, 47 Va. App. 114, 122, 622 S.E.2d 282, 286 (2005) ("In finding [the defendant] guilty, the factfinder necessarily found that [the defendant] forcibly detained [the victim] 'for the length of time necessary for his purpose.'" (quoting Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984))).

Therefore, the evidence established that appellant was guilty of abduction as a principal in the second degree when he overtly assisted and encouraged the other men to force R.S. to return to the hotel against her will.

### B. Sufficiency of the Evidence to Prove Sex Trafficking

Appellant asserts that the evidence was insufficient to convict him of sex trafficking under Code § 18.2-357.1(A) because the Commonwealth did not prove that he intended to benefit or assist others in benefitting from prostitution. Code § 18.2-357.1(A), enacted in 2015, provides:

> Any person who, with the intent to receive money or other valuable thing or to assist another in receiving money or other valuable thing from the earnings of a person from prostitution or unlawful sexual intercourse in violation of subsection A of § 18.2-346, solicits, invites, recruits, encourages, or otherwise causes or attempts to cause a person to violate subsection A of § 18.2-346 is guilty of a Class 5 felony.

Appellant asserts that he "had no intent to participate in the prostitution activities or to help others participate in them." He also contends that although he stayed in the hotel room with other members of the group, the evidence did not establish that he knew the rooms were being paid for by R.S.'s prostitution earnings.

In determining whether the evidence is sufficient to support a conviction, "[t]his Court does not substitute its judgment for that of the trier of fact . . . and the trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citation omitted).

In an attempt to distance himself from the prostitution enterprise, appellant argues that R.S. was a "willing participant" who engaged in prostitution to support her heroin habit and acquire money to obtain "a better life" for herself. He notes that in exchange for her prostitution earnings, McQuitty provided her with food, shelter, and drugs.

The evidence established that appellant was staying with a group of people in two rooms at the Red Roof Inn. The group used one room for sleeping and waiting for prostitution appointments, and R.S. used the other room for her prostitution appointments. R.S.'s prostitution earnings paid for the rooms. When R.S. left the Red Roof Inn, appellant assisted McQuitty and McClenny in forcing her to return to the hotel and continue taking prostitution appointments.

R.S. testified that after she reunited with McQuitty, she stayed in hotel rooms with McQuitty and appellant that she paid for when she resumed prostitution. Appellant's contention that he was unaware the rooms were rented with the proceeds from R.S.'s prostitution is unpersuasive, given the extensive circumstantial evidence to the contrary. See Foster v. Commonwealth, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942) (affirming conviction for "keeping a house of ill fame" based on circumstantial evidence showing the defendant knew that "the proceeds of [his wife's] earnings [from prostitution] went in part to the [house owner] and [were] used in the maintenance of [his residence]"). Additionally, when appellant was apprehended, he possessed keys for two hotel rooms, which Detective Chabot indicated was common for someone involved in the sex trafficking trade.

It is significant to note that the sex-trafficking statute does not require force or coercion, although those elements were present in this case. The statute merely requires the Commonwealth to show that a defendant was "solicit[ing] . . . encourag[ing] . . . or otherwise caus[ing] or attempt[ing] to cause" another to engage in prostitution "with the intent to receive money or other valuable thing or to assist another in receiving money or other valuable thing." Code § 18.2-357.1(A). Appellant's involvement in R.S.'s return to the Red Roof Inn to resume prostitution, and the payment of his hotel room from her prostitution earnings, were sufficient to establish his guilt.

## C. Conspiracy Charges

The Supreme Court has defined conspiracy as "an agreement between two or more persons by some concerted action to commit an offense." Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). Conspiracy "requires knowledge of and voluntary participation in" the agreement to carry out the criminal act. Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting United States v. Bright, 630 F.2d 804, 813 (5th Cir. 1980)). Mere participation in the crime is insufficient to prove conspiracy; "[t]he agreement is the essence of the conspiracy offense." Id. at 527-28, 375 S.E.2d at 384.

"[M]ost conspiracies are 'clandestine in nature,'" and "[i]t is a rare case where any 'formal agreement among alleged conspirators' can be established." Johnson v. Commonwealth, 58 Va. App. 625, 636, 712 S.E.2d 751, 756 (2011) (quoting James v. Commonwealth, 53 Va. App. 671, 678, 674 S.E.2d 571, 575 (2009)).

Further, defendants need not act in tandem while engaged in a conspiracy. When

> it has been shown that the defendants "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object."

Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388 (1990) (quoting Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987)).

### (1) Conspiracy to Commit Abduction

Appellant argues that the Commonwealth failed to prove that he and the other men had an agreement to force R.S. to return to the Red Roof Inn when they went to her hotel room. He claims that R.S.'s abduction was a "spur of the moment act" by McClenny. However, the unrebutted evidence belies his assertion. The three men went to the hotel room armed with a handgun. They

confronted and castigated R.S. and told her that she had no choice but to return to the Red Roof Inn with them. When R.S. demurred, appellant exhorted one of the men to pistol-whip her.

In support of his argument, appellant cites to the lack of direct evidence about a conversation among the men before they went to R.S's hotel room. However, "[t]he fact that there is no evidence of an actual conversation between [the parties] is not dispositive [because] a conspiracy may be inferred by actions alone." Charity v. Commonwealth, 49 Va. App. 581, 587, 643 S.E.2d 503, 505-06 (2007). Further, "[c]ircumstantial evidence is as acceptable to prove guilt as direct evidence." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980).

When appellant and the other men joined Bethel at R.S.'s hotel room, they were aware that R.S. left the Red Roof Inn because she was upset with the group. There was sufficient evidence for the fact finder to conclude that appellant went to the hotel room with the other men under an agreement to coerce R.S. to return to the Red Roof Inn. "[T]he evidence of motive, time, place, means and conduct all concurred to form an unbroken chain which established a conspiracy to commit the crime[]." Sam v. Commonwealth, 13 Va. App. 312, 320, 411 S.E.2d 832, 836 (1991) (finding sufficient circumstantial evidence of conspiracy to commit abduction where the defendant's actions supported the conclusion that he was engaged in a conspiracy, despite the lack of direct evidence of a prior agreement).

### (2) Conspiracy to Commit Sex Trafficking

Code § 18.2-357.1(A) punishes anyone who "solicits, invites, recruits, encourages, or otherwise causes or attempts to cause a person [to commit prostitution]." The court found the Commonwealth's evidence proved that the group was engaged in sex trafficking and appellant "was involved with that and did encourage that." Evidence supports the court's conclusion that appellant was involved in a conspiracy at least to "encourage" R.S. to continue to commit prostitution.

- 10 -

The Commonwealth was not required to show a specific conversation among the men establishing the conspiracy. "A conspiratorial agreement 'often may only be established by circumstantial and indirect evidence including the overt actions of the parties.'" Johnson, 58 Va. App. at 636, 712 S.E.2d at 756-57 (quoting Jones v. Commonwealth, 279 Va. 295, 301, 687 S.E.2d 738, 741 (2010)).

Appellant was a member of the group staying in two rooms at the Red Roof Inn, rented with R.S.'s prostitution earnings. R.S. testified that the men told her "she couldn't live for free" and appellant's co-conspirator set up a prostitution advertisement for her. Appellant and the other men temporarily vacated one of the rooms when R.S. was prostituting. When R.S. attempted to leave the group, appellant confronted her with the other men. His contention that he did not know that the men were going to pressure R.S. to return and continue prostituting was rejected by the fact finder. Appellant was involved in the argument and, in fact, encouraged the man holding the gun to pistol-whip R.S. when she indicated that she did not want to "work for them." R.S. testified that after she returned to the Red Roof Inn, she began taking prostitution appointments again because "[t]hat's what [she] was there for." Appellant benefitted monetarily from her activities; he was provided a hotel room that was financed by her earnings. Accordingly, the circumstantial evidence proved that appellant formed an agreement with his co-conspirators to encourage and coerce R.S. to commit prostitution.

### D. Sufficiency of Evidence to Prove Use of a Firearm

It is unlawful "for any person to use . . . any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit [various enumerated felonies, including] abduction." Code § 18.2-53.1. Appellant asserts that because the evidence was insufficient to find him guilty of abduction, it was therefore insufficient to find him guilty of using a firearm in the commission of an abduction.

- 11 -

We have found that the evidence was sufficient to find appellant guilty of abduction as a principal in the second degree. Additionally, we note that it is not necessary for a defendant to physically possess a firearm to be convicted under Code § 18.2-53.1, if the defendant is acting in concert with the gunman to commit the underlying felony. Carter v. Commonwealth, 232 Va. 122, 125-26, 348 S.E.2d 265, 267-68 (1986). "[E]ach participant in [a] crime may be held accountable for the actions of the other participants." Davis v. Commonwealth, 36 Va. App. 291, 296, 549 S.E.2d 631, 633 (2001). See also Spradlin v. Commonwealth, 195 Va. 523, 528, 79 S.E.2d 443, 445 (1954) ("If there is concert of action with the resulting crime one of its incidental probable consequences, then . . . all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime."). The fact that appellant was not the person who held the gun to R.S.'s head is immaterial. He was acting in concert with the man who was threatening and detaining her. Therefore, the evidence was sufficient to convict appellant of the crime of using a firearm in the commission of an abduction.

CONCLUSION

Because we find that the court did not err in determining that the evidence was sufficient to establish the elements of the offenses for which he was on trial, we affirm appellant's convictions for abduction, sex trafficking, conspiracy to commit abduction and sex trafficking, and use of a firearm in the commission of an abduction. We remand for the limited purpose of correcting the clerical error referenced in footnote one.

Affirmed and remanded.