COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia

MOHAMMED HUSSEIN ABANDA

v.      Record No. 0770-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE KIMBERLEY SLAYTON WHITE
OCTOBER 24, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on brief), for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Mohammed Hussein Abanda was convicted of one count of

conspiracy to commit abduction for pecuniary benefit, in violation of Code § 18.2-22, and two

counts of abduction for pecuniary benefit, in violation of Code § 18.2-48.[1]  He challenges the

sufficiency of the evidence supporting his convictions.  Finding no error in the trial court's

judgment, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413 (A).

[1] At the conclusion of the evidence, the trial court also convicted Abanda of misdemeanor
assault and battery by mob in violation of Code § 18.2-42, but the final sentencing order states
that he was convicted of malicious injury by mob, a felony.  Both parties agree that the
sentencing order should reflect that Abanda was convicted of assault and battery by mob.
Although Abanda does not challenge his assault and battery by mob conviction appeal, we
remand the case to the trial court to correct any scrivener's error in the final sentencing order.

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

The evidence established that, in December 2020, Delante Winston "hit the jackpot" while playing a slot machine at Abanda's convenience store.  When he was paid only $2,000 instead of the $4,000 winnings, Winston returned to the store later and "picked" the slot machine to "get [his] money back."  Winston visited the store multiple times, taking a total of $1,500.

After Winston received a call accusing him of stealing $15,000 from the store, he agreed to meet Abanda at the store on the night of December 26, 2020, to discuss "the situation."  As depicted by store surveillance footage, Winston and his girlfriend, Sadiqu Shabazz, were waiting inside the store entrance when Abanda entered, followed by five others.  After the group entered, Abanda's companions bolted the door behind them.  One of the men patted down Shabazz for weapons.  Abanda and one of Abanda's companions directed Winston to move to the back of the store and, upon seeing the man's gun, Winston complied.

Hussein Madab was one of Abanda's companions.  Abanda had called Madab earlier that day and instructed him to meet Abanda at the store.  When Madab arrived, he was carrying a firearm, as were Abanda and Abanda's other companions.  Once Winston reached the back of the store, one of Abanda's companions punched Winston in the head.  On Abanda's orders, the group ripped off Winston's clothes down to his boxers and placed him in a chair.  Abanda showed

- 2 -

Winston a video of Winston taking money from the slot machine and demanded that Winston return his money.

Demanding that, "I need my money," and making reference to his companions, Abanda warned Winston, "they don't play about me." Abanda handcuffed Winston to the chair. At Abanda's direction, Winston was stripped down to his boxer shorts. As the group contemplated different methods of "torture," Abanda watched and smoked a hookah. Abanda consulted with others during the night of torture, which included Winston being burned by a cigarette, being severely beaten, and being subjected to waterboarding. Winston testified that, on Abanda's orders, the group beat him for several hours as he sat defenseless in the chair. Abanda's cousin struck Winston in the head with a pistol. At one point, a female in Abanda's group asked Abanda if she could poison Winston, but Abanda answered, "No, not yet." Abanda repeatedly demanded that Winston pay him $15,000.

Abanda instructed Madab to search Winston's apartment for money. Accompanied by three other armed men, Madab searched the apartment, but he did not find any money. At Abanda's direction, Shabazz withdrew cash from the store ATM and surrendered it to his companions. Although Abanda assured her that his companions would not harm her, he took her cell phone and did not allow her to leave. Further, while Madab testified that she was in fact free to leave, Shabazz testified that one of Abanda's men threatened to kill her if she left.

At Abanda's direction, his associates also used Winston's debit card to withdraw cash from the store ATM. But when Abanda received only a few hundred dollars, he renewed his demand for $15,000 from Winston. Winston pleaded for his life, stating he had no more money. As Abanda stood in front of Winston, other members of the group tipped Winston's chair back, placed a towel over his face, and poured a large bucket of hot water on his face. Winston could not breathe.

Finally, in desperation, Winston offered to give Abanda money by showing him how to "pick" open the slot machine.

Abanda dressed Winston and escorted him from the back room to the slot machine. After Winston demonstrated to Abanda that he could open the slot machine, Abanda decided to move Winston to a different location. When Madab and Abanda's other companions returned from Winston's apartment, Abanda told him to "follow [his] order[s]." Madab noted that Abanda was "in charge" and that everyone in the group complied with his orders. Abanda placed another male in the front passenger seat of Madab's car and Shabazz in the back seat. Still handcuffed, Winston was placed in a different vehicle, and a hat was pulled over his eyes.

Madab followed Abanda's vehicle and a second vehicle to a shed. When Shabazz entered the shed, over 15 people were inside, including Abanda and Winston. Before leaving Winston in the shed with his other companions, Abanda reminded him that he needed the money. After Abanda left, one of his companions escorted Winston outside and doused him with freezing water.

Winston told Abanda's companions he could obtain money at a "Grab and Go" convenience store by picking the locks on the slot machines. Three men drove Winston to the store, removed his handcuffs, and warned him that they would shoot Shabazz if he "tr[ied] anything." One of the men escorted Winston into the store, but Winston was unable to extract any money from the slot machine because it was powered off. As he walked back to the car, Winston feared the men would shoot him, so he ran. The men chased him and fired at him, but Winston escaped and called 911 at a nearby store.

Meanwhile, Abanda's associates had moved Shabazz from the shed to an apartment. Shabazz passed out at the apartment after consuming "water" provided by one of Abanda's men. When she regained consciousness, she was naked in an apartment room with two men. After one of them announced that Winston had escaped, the men drove Shabazz to a store where they waited in

their vehicle with her. A second vehicle arrived, and a third man entered the back seat next to Shabazz. Following a discussion about Shabazz's fate, the men decided to kill her because she had "seen [their] faces." The man next to Shabazz produced a gun, pointed it at Shabazz's head, and pulled the trigger. The gun jammed. As the men drove Shabazz to a different location, she "jumped out of the car," took off running, and called the police from a cellular phone store.

Officer J. Peck responded to Shabazz's call on the afternoon of December 27, 2020. Peck testified that Shabazz was "crying" and "afraid." He placed her in a patrol car and transported her to police headquarters, where Detective E. O'Brien interviewed her. Detective O'Brien had responded earlier to Winston's 911 call and knew that Winston was "frantic" about Shabazz's welfare. Detective O'Brien testified that Shabazz appeared "very traumatized" and "was basically nonverbal." Abanda was arrested on January 19, 2021.

At trial, the Commonwealth introduced store video depicting much of what was described by Winston.

At the conclusion of the evidence, Abanda moved to strike the abduction charges and the conspiracy charge. He asserted that the evidence failed to prove abduction because it did not establish that he "put hands [on] or forced any of the individuals in the back or out or otherwise." Although Abanda conceded "[h]e was present" during the abductions, he noted that he was not present "at all times." He also stressed that the evidence did not establish he brandished a firearm to abduct Winston and Shabazz. With respect to the conspiracy charge, Abanda argued that the evidence did not establish that Abanda entered into a "preconceived" agreement to abduct Winston and Shabazz.

The Commonwealth countered that the evidence proved that Abanda was "the ringleader" of the offenses committed against Winston and Shabazz and that he orchestrated their abductions to force Winston to return the money he had stolen. The Commonwealth stressed that Winston and

- 5 -

Shabazz remained under the control of Abanda and his associates from the evening of December 26, 2020, until their escape on the afternoon of December 27, 2020.

Regarding the conspiracy charge, the Commonwealth emphasized that the circumstantial evidence was sufficient to prove an agreement to commit abduction. The Commonwealth noted that Abanda had planned for Madab to meet him at the store and that the store surveillance footage depicted a large group entering the store with Abanda and immediately escorting Winston to the back, effecting the plan to abduct Winston.

The trial court denied Abanda's motion to strike and convicted him of one count of conspiracy to commit abduction for pecuniary benefit, two counts of abduction for pecuniary benefit, and one count of assault and battery by mob. Abanda appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## I. *Abduction*

Abduction is defined in Code § 18.2-47, which provides in pertinent part:

> Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

Abanda was convicted of abduction for pecuniary benefit in violation of Code § 18.2-48. Code § 18.2-48 includes an additional intent element, requiring that the abduction be for "pecuniary gain."[2]  Abanda's argument focuses on the intent required under Code § 18.2-47, i.e., that the evidence failed to prove he acted with the "intent to deprive [the victims] of [their] personal liberty."  He contends that the trial court erred by denying his motions to strike because the evidence established only that he "wanted money that he believed was owed to him."  With regard to Shabazz, he also contends that she was not abducted because Madab testified that she was "free" to leave the store, and because Abanda expressly instructed his companions not to harm her.  We disagree.

"A conviction under the abduction statute 'requires only a showing of "physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception," without more.'"  *Clanton v. Commonwealth*, 53 Va. App. 561, 567 (2009) (en banc) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005)).  "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts."  *Walker v. Commonwealth*, 74 Va. App. 475, 492 (2022) (quoting *Salazar v.*

---

[2] Code § 18.2-48 states in pertinent part: "Abduction (i) of any person with the intent to extort money or pecuniary benefit . . . shall be punishable as a Class 2 felony."

*Commonwealth*, 66 Va. App. 569, 579 (2016)), *aff'd on other grounds*, ___ Va. ___ (June 1, 2023).[3]

Abanda's argument that he intended only to recover money from his victims, rather than to deprive them of their personal liberty, mirrors an argument we rejected in *Walker*. In *Walker*, the defendant entered a bank armed with a gun and struck a customer standing at the teller's station; the customer dropped to the ground when he saw the defendant's gun and remained there during the robbery. *Id.* We rejected the defendant's argument that his sole intent was "to rob the bank of money" rather than to "restrain [the customer]'s liberty." *Id.* at 493. Stressing that "a perpetrator may possess multiple intents at the same time," we held that "Walker's admitted intention to commit bank robbery" did not preclude a rational inference that "he simultaneously harbored the intent to restrict [the customer]'s liberty." *Id.* at 494. To the contrary, we noted that "[s]uch multiple intentions are a component of a violation of Code § 18.2-48." *Id.*

For similar reasons, we find no merit in Abanda's argument that his intent to obtain money from his victims precluded a rational fact finder from finding that he also intended to deprive them of their personal liberty. The evidence established that Abanda brought several armed accomplices with him when he met Winston and Shabazz at the store. He immediately directed Winston to the back of the store, stripped him, handcuffed him to a chair, and showed Winston a video of him stealing money from the store. *See Vay v. Commonwealth*, 67 Va. App. 236, 252 (2017) (defendant's forceful movement of victim from main room to private area sufficient to prove abduction). Abanda demanded money from Winston as several armed men surrounded Winston and discussed ways to torture him. Consistent with images of Abanda directing his group in the surveillance footage, Madab testified that Abanda was in charge of the

---

[3] The Supreme Court did not grant an appeal on the ground for which *Walker* is cited here. Consequently, that portion of this Court's decision in *Walker* remains good law.

group and that they complied with his orders. Abanda warned Winston that his group "don't [sic] play" when it came to Abanda's interests. As Abanda stood by, the group repeatedly beat Winston, burned him with a cigarette, waterboarded him, and threatened to poison him. At Abanda's direction, the armed group transported Winston, still handcuffed, to a shed and held him there. Only after Winston offered to steal money from a slot machine at another store did the group move him, and when Winston ran from the convenience store, his captors chased him and opened fire.

Shabazz testified that one of Abanda's men threatened to kill her if she left his store and that Abanda forced her to give his accomplices money from her debit card. Abanda orchestrated the group's departure from his store to a shed and upon leaving the store, Shabazz was placed in a vehicle with two armed men. His accomplices eventually moved her to an apartment where they drugged her. After the men learned Winston had escaped, they drove Shabazz to a store and tried to shoot her. Although Shabazz testified that Abanda told his accomplices at the store not to hurt her, she also testified that he never told her she was free to leave and witnessed the threats against her. When Abanda orchestrated the group's departure from the store, he did not direct his accomplices to release her.

Even if Abanda did not directly detain or seize Shabazz or Winston, he was criminally liable for their abductions as a principal in the second degree. "[P]rincipals in the second degree 'may be indicted, tried, convicted, and punished as principals in the first degree.'" *Farmer v. Commonwealth*, 61 Va. App. 402, 414 (2013) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 665 (1985)); *see also* Code § 18.2-18. "A principal in the second degree . . . is one who is present [and], actually or constructively, assist[s] the perpetrator in the commission of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372 (1967)). A defendant is guilty as a principal in the second

- 9 -

degree when he acts in concert of action with the perpetrators of the offense. *Carter v. Commonwealth*, 232 Va. 122, 125 (1986). When a group acts in such a way that the resulting crime is "one of [the] incidental probable consequences" of such group action, "all who participate in any way in bringing about [that] crime[ ] are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime." *Winston v. Commonwealth*, 268 Va. 564, 602 (2004) (upholding concert of action jury instruction).

Viewed as a whole, the evidence proved beyond a reasonable doubt that Abanda seized and detained Winston and Shabazz with the intent to deprive them of their personal liberty until Winston produced $15,000. Even assuming, arguendo, that he did not directly detain them, his participation and orchestration of their abductions rendered him "equally answerable" for his accomplices' detention of them under threat of harm. Accordingly, the evidence was sufficient for a rational trier of fact to find Abanda guilty of both counts of abduction for pecuniary benefit beyond a reasonable doubt.

## II. Conspiracy

Abanda contends that the trial court erred by denying his motion to strike the conspiracy charge because it failed to prove an agreement between Madab and Abanda, or between Abanda's other companions and Abanda, to abduct Winston or Shabazz. Citing Madab's testimony that he feared Abanda, Abanda contends that Madab's actions with respect to the victims were based on fear rather than any agreement between Madab and Abanda. Although Abanda acknowledges he had other companions, he asserts "there was no evidence that [he] had an agreement or shared intent with any of the individuals at the store."

"To prove a conspiracy, the Commonwealth must offer evidence of 'an agreement between two or more persons by some concerted action to commit an offense.'" *James v. Commonwealth*, 53 Va. App. 671, 677-78 (2009) (quoting *Wright v. Commonwealth*, 224 Va.

502, 506 (1982)).  "The existence of a conspiracy may be proven by circumstantial evidence." *Chambliss v. Commonwealth*, 62 Va. App. 459, 466-67 (2013).  "[I]t is a rare case where any 'formal agreement among alleged conspirators' can be established."  *Pulley v. Commonwealth*, 74 Va. App. 104, 120 (2021) (alteration in original) (quoting *Carr v. Commonwealth*, 69 Va. App. 106, 118 (2018)).  "[T]he fact that there is no evidence of an actual conversation between [the parties] is not dispositive [because] a conspiracy may be inferred by actions alone." *Carr*, 69 Va. App. at 118-19 (second and third alterations in original) (quoting *Charity v. Commonwealth*, 49 Va. App. 581, 587 (2007)).  "[When] the Commonwealth can show that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to that object.'"  *Pulley*, 74 Va. App. at 120 (second alteration in original) (quoting *Carr*, 69 Va. App. at 118).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (second alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).  "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt."  *Vasquez*, 291 Va. at 249-50 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Here, the circumstances surrounding Winston's abduction were sufficient to support a rational conclusion that Abanda conspired with his companions to abduct him.  As Winston and Abanda had scheduled a meeting at the store, Abanda knew that Winston would be there when Abanda arrived with several armed individuals.  Immediately after Abanda and the group entered

- 11 -

the store, his companions bolted the door while Abanda and another armed associate directed Winston to the back of the store. All of Abanda's companions were armed, including Madab, whom Abanda had called earlier that day, summoning him to the store. As depicted in the video, one of the individuals in Abanda's group brought handcuffs to the store. When Abanda moved Winston to the room in the back of the store, he handcuffed Winston, permitting a rational inference that Abanda and the group had planned to use them. Abanda, who owned the store, issued orders to the group, and the group complied. At Abanda's direction, the group detained, assaulted, and tortured Winston for hours, took his debit card and funds from his account, accompanied Shabazz to the ATM machine and collected money, and transported both of them to a shed in the middle of the night. Accordingly, the evidence proved beyond a reasonable doubt that Abanda conspired with his companions, with the common goal to abduct Winston for pecuniary benefit.

## CONCLUSION

For the reasons stated, the trial court's judgment is affirmed. We remand to the trial court for the sole purpose of correcting any scrivener's error in the final sentencing order.

*Affirmed and remanded.*