COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White
Argued at Richmond, Virginia

**PUBLISHED**

WILLIAM BRADLEY SEAT

OPINION BY
v.     Record No. 1826-23-2     CHIEF JUDGE MARLA GRAFF DECKER
SEPTEMBER 3, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

John W. Parsons for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


William Bradley Seat appeals his jury-trial conviction for commercial sex trafficking in

violation of Code § 18.2-357.1. He challenges the sufficiency of the evidence to support his

conviction on two grounds. Seat believes his exchange of more than 175 text messages with a

person who posted an ad expressly seeking "a pimp" did not go far enough to prove an act

constituting sex trafficking. He also complains that he did not mean what he said in that series of

messages and so the Commonwealth did not prove the necessary intent. We hold the evidence was

sufficient for the jury to conclude that he was engaged in the crime of sex trafficking, and we affirm

the judgment.

BACKGROUND[1]

On February 28, 2022, Detective Joseph Wechsler of the Henrico County Police Department posted an advertisement on "an escort website" called "MegaPersonals." Investigating potential instances of commercial sex trafficking, the detective designed the advertisement to attract someone interested in acting as "a pimp" for a female sex worker. The advertisement was purportedly posted by "Britt" to find "a pimp" to give her "direction." It listed a phone number created for use in the investigation and included a photograph of a young woman who was a police officer posing as a prostitute.

That same day, Detective Wechsler received a text message from a particular phone number that was sent to the phone number in the advertisement. In the message, the sender wrote that he was "NOT a pimp" but immediately added, "You can think of me as more a production artist and [l]iaison to high end clientele." He said that he and "Brit[t]" "m[ight] be able to work together for [their] mutual benefit." He asked Britt to send "recent and accurate photos" of herself, one clothed and one nude. The texter, who later identified himself as "Will," asserted that he wanted "to decide the best plan for moving forward to maximize possible income." Detective Wechsler responded by texting the requested two photos to the phone number that had responded to the advertisement. Wechsler then turned the investigation over to Henrico County Police Detective Dennis Detrick.

Posing as "Britt," Detective Detrick continued texting with Will and did so from February 28 to March 16, 2022. Will sent Britt a photo he said was of himself. Will told Britt

_____

[1] On appeal, the facts are recited "in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). Doing so requires the appellate court to "discard the evidence of the [appellant] in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Id.* at 473 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

that he would "manage, guide, [and] advise" her in their joint endeavor. According to Will, he would "create content and an alter ego for [her] that would interest those with deep pockets so [they] c[ould] empty the[ pockets] and help [her] grow [a] safe and prosperous business." Will explained that he would "get [her] a room" in a "nice hotel" and "market [her] on some select sites better than" MegaPersonals. He also said he would be close by to "handle" difficult clients. In the course of the text exchange, Will described in graphic detail the sex acts he expected Britt to perform for clients, including sexual intercourse and fellatio. Will also described how the two of them, working together, could charge "premium prices" for sexual acts depending on the degree of intimacy Britt was willing to engage in with clients. When asked what he expected from any arrangement with Britt, Will replied, "money, plain and simple, a percentage of the profit." Will also acknowledged that he would "likely have to supply the funds to start th[e] endeavor."

In a recorded phone conversation, a female police officer posing as Britt discussed a possible face-to-face meeting with Will.[2] Later, Will sent a second photo purporting to be of him, and he asked for additional photos of Britt without clothing. In further communication by text, Will expressed distrust of Britt's commitment to the arrangement, said he suspected it was "all bullshit or a set up" for a robbery, and ended the text dialogue. But he said that the "interaction inspired some great ideas that w[ould] benefit [him] and the right girl greatly." In all, over 175 text messages were exchanged between the two telephone numbers of Britt and Will over the course of the sixteen-day period.

---

[2] The conversation was brief, lasting only about two and a half minutes. It did not include any specific discussion of prostitution beyond a vague reference by Britt that she "had to get away from [her] sister" to take the phone call because her sister "didn't know what [she was] doing."

Detective Detrick, as part of his investigation, made efforts to identify "Will," the person contacting Britt from the particular phone number. The detective determined that the phone number was registered to Brad Seat. And he learned that a William Bradley Seat lived in Mechanicsville, Virginia. Detrick obtained a photograph of William Bradley Seat from the Virginia Department of Motor Vehicles that matched the person in the two photographs Will had texted to Britt.

Seat was charged with commercial sex trafficking and tried by a jury. In his defense, Allen Ashworth, his friend of fifteen years, testified that he knew Seat had engaged in the communications that were the subject of the trial. Ashworth said that Seat had shown him and Ashworth's fiancée the text messages and the trio discussed how Seat was trying to "scam[] a scammer" by "wasting [the person's] time."

Seat, who acknowledged his prior felony convictions, testified and admitted that he sent the texts. He claimed he did so because he thought Britt's advertisement was a scam and he was bored. Seat said he was trying to "troll" the person who posted the ad. He defined "trolling" as wasting that person's time. He maintained that he thought the ad was a setup and suggested he used graphic language in the text messages to engage in "fantasy role-playing." He claimed that he disengaged when the conversation turned to obtaining a room because things got "[a] little too real." According to Seat, he made a "stupid" decision and never intended to follow through with any of the things he proposed in the texts.

The jury convicted Seat of commercial sex trafficking, and he was sentenced to five years in prison with four years suspended.

## ANALYSIS

Seat challenges the sufficiency of the evidence to sustain his conviction for commercial sex trafficking. He does not dispute that he engaged in the texting dialogue. Nevertheless, he

suggests the Commonwealth failed to prove that his actions fell within the prohibitions of the statute. He also argues the evidence does not show that he committed those acts with the requisite intent.[3]

To the extent our analysis requires us to interpret the language in a statute, we do so de novo. *Bland-Henderson v. Commonwealth*, 303 Va. 211, 218 (2024). "In determining whether the evidence was sufficient to support a criminal conviction," however, "the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "Under the governing standard, 'we review factfinding with the highest degree of appellate deference.'" *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). Accordingly, in conducting its review, "the Court defers to the jury's findings of fact unless they are plainly wrong or without evidence to support them." *Haba v. Commonwealth*, 73 Va. App. 277, 284 (2021). This deference is owed to both the jury's assessment of the credibility of the witnesses and the inferences to be drawn "from basic facts to ultimate facts." *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our deferential standard of review also "'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn"' from that evidence." *Green*, 72 Va. App. at 200 (alteration in original) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

---

[3] Seat suggests only that the texts themselves did not prove the act or intent required by the statute. To the extent it could be argued that he did not preserve either of these challenges for appeal because he did not raise them with sufficient specificity in the trial court, we hold that deciding this case on the merits provides the best-and-narrowest ground for resolution. *See Durham v. Commonwealth*, ___ Va. ___, ___ n.2 (Aug. 1, 2024) (recognizing that deciding a case on the merits rather than on waiver principles can provide "the *best* and narrowest ground[]" for resolution (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

Applying this highly deferential standard, "[i]f there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "Rather, for an appellate court, '[t]he only "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alterations in original) (quoting *Barney*, 302 Va. at 97 (emphasis added)).

Code § 18.2-346 prohibits prostitution, which it defines as the performance of various specified sexual acts "for money or its equivalent." In turn, the relevant portion of the commercial sex trafficking statute, Code § 18.2-357.1(A), provides that "[a]ny person who . . . solicits, invites, recruits, encourages, or otherwise causes or attempts to cause a person to violate § 18.2-346," the prostitution statute, "is guilty of a Class 5 felony" if that person commits the act with the requisite mens rea. That mens rea includes acting with "the intent to receive money" or other thing of value "from the earnings of a person from prostitution," or the intent "to assist another" in receiving such payment, as proscribed by Code § 18.2-346. Code § 18.2-357.1(A).

Seat contends first that his lengthy text message exchange with "Britt" standing alone—absent any concrete action to advance the earning of money through prostitution—was insufficient to sustain a conviction for commercial sex trafficking. He correctly notes that the two published appellate decisions addressing the sufficiency of the evidence on the behavior element of that statute, Code § 18.2-357.1(A), both involved concrete actions by the defendant in furtherance of a scheme to earn money through prostitution. *See Johnson v. Commonwealth*, 69 Va. App. 639, 644-45 (2019) (affirming where the defendant drove the prostitute to Virginia, knew she advertised her services as a prostitute, retrieved her earnings from her storage place, and was

alone in the hotel room in which she told police they would find her pimp); *Carr v. Commonwealth*, 69 Va. App. 106, 116-17 (2018) (affirming where the defendant threatened a woman to continue earning money through prostitution, helped return her to a motel where she had done so, and, upon his arrest, had keys to motel rooms paid for by her prostitution). As this Court pointed out in *Carr*, however, a conviction under Code § 18.2-357.1 may rest on evidence of the defendant's "solicit[ing,] . . . encourag[ing,] . . . or otherwise caus[ing] or attempt[ing] to cause" another to engage in prostitution with the required intent. *Carr*, 69 Va. App. at 117 (second, fourth, fifth, and sixth alterations in original) (quoting Code § 18.2-357.1(A)). In other words, the statute, by its specific terms, proscribes conduct that falls short of causing a *completed* act of prostitution. *See id.* It includes soliciting, encouraging, or attempting to cause prostitution. *See id.*; *see also Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023) (providing that under the "'plain meaning rule'" of statutory construction, the appellate court must "interpret plain, ordinary words in a plain and ordinary way" (quoting *Supinger v. Stakes*, 255 Va. 198, 206 (1998)).

The evidence of Seat's texts to Britt, viewed under the proper standard, was sufficient to prove the behavior element of the offense of commercial sex trafficking. Seat responded to Britt's ad for a "pimp" who would provide her with "direction." Despite suggesting that he was not a pimp, Seat texted that Britt should "think of [him] as more a production artist and [l]iaison to high end clientele." He further wrote that he would guide, market, and manage her in "grow[ing a] safe and prosperous business" to benefit them both financially. He asked Britt to send photos of herself, including one in the nude, so he could determine "the best plan for moving forward." He texted that he needed the photos to "maximize [their] possible income," including "put[ting] together an ad[ to] make[ her] stand out." Seat clarified the nature of the business by confirming, in graphic terms, the specific sex acts Britt might be willing to perform.

- 7 -

He also indicated they could charge higher prices if she was able to provide the "girlfriend experience" in lieu of being "the robotic all business type." Seat made clear that he would fund the initiation of the business, get Britt a hotel room, and be nearby to help her with any difficult clients. These statements and representations proved that he actively solicited, encouraged, or attempted to cause Britt to engage in prostitution. Seat's actions met the requirements of the statute.

Seat's second argument is that the Commonwealth failed to prove mens rea because he had no intent to receive money earned through prostitution. Relying on his own evidence, he suggests that he believed the ad and Britt's responses were a "scam" and he participated in the text exchange purely for entertainment purposes, including trolling the person who posted the ad. He and his friend testified to that effect at his jury trial. According to Seat, despite the jury's finding of guilt, that testimony supported a reasonable hypothesis of innocence related to his intent.

"Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (considering such evidence to determine whether the defendant acted with the required lascivious intent). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Clark v. Commonwealth*, 78 Va. App. 726, 751-52 (2023) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc)). The jury, not the appellate court, "determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464. And "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact," which "is binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700

(2023) (en banc) (alterations in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)).

Further, in determining whether the requisite intent has been proved, the appellate court again gives appropriate deference to the role of the jury. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine the[] credibility[ and] weight to be given their testimony, [as well as] the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). In short, "[w]e give deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009); *see Shifflett v. Commonwealth*, 289 Va. 10, 11-12 (2015) (recognizing that "Virginia statutory provisions and common law" permit the fact finder to consider a witness's prior felony conviction as "probative of [the] witness's veracity"). It is under this legal lens that we view Seat's challenge.

Here, much of the same evidence that established Seat committed the necessary acts to prove the offense also proved that his intent met the mens rea requirement. His communications with Britt began when he responded to an explicit advertisement seeking assistance in a prostitution enterprise. In the lengthy text exchange that followed, he solicited nude photographs of Britt and claimed they could work together for their mutual financial benefit. Seat stated that he expected to receive a percentage of the profits from Britt's work of engaging in specific, explicitly described sex acts. He claimed that he would "manage, guide, advise, [and] create content and an alter ego" for her as the sex worker. He added that these efforts "would interest those with deep pockets so [the two of them] c[ould] empty th[ose deep pockets]." When asked what he expected from the arrangement, he bluntly texted, "money, plain and simple, a percentage of the profit."

Through this exchange over the course of sixteen days, Seat, a convicted felon, provided evidence from which the jury could find that he clearly expressed his intent to receive money by soliciting, encouraging, or attempting to cause another to engage in a prostitution business. His texts furnished proof that he intended to fund the operation, manage it, and profit from it. The jury, as the finder of fact, was entitled to reject Seat's evidence and disbelieve his trial testimony that he did not mean what he said in his texts, and to conclude from the evidence as a whole that he acted with the intent to receive money from prostitution. *See Camann v. Commonwealth*, 79 Va. App. 427, 443 (2024) (en banc) (holding that the trier of fact can both "disbeliev[e] a defendant's testimony" and "consider such 'perjured testimony as affirmative evidence of guilt'" (quoting *Morris v. Commonwealth*, 269 Va. 127, 134 (2005))); *Fary v. Commonwealth*, 77 Va. App. 331, 347 & n.4 (2023) (en banc) (holding that "the *fact finder*, not th[e appellate c]ourt, . . . determines whether a defendant's hypothesis [of innocence] is reasonable" and that the appellate court may "review [such] a factual finding [only] to determine if it is 'plainly wrong or without evidence to support it'" (quoting *Moseley*, 293 Va. at 466)), *aff'd per curiam*, 303 Va. 1 (2024).

Accordingly, the jury was entitled to conclude beyond a reasonable doubt that the evidence proved both the act and intent elements necessary to find Seat guilty of commercial sex trafficking.

CONCLUSION

For these reasons, we hold the evidence is sufficient to support Seat's conviction for commercial sex trafficking in violation of Code § 18.2-357.1, and we affirm the trial court's judgment.

*Affirmed.*